UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| THOMAS C.[1], <br><br>            Plaintiff, <br><br>vs. <br><br>KILOLO KIJAKAZI, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION; <br><br>            Defendant. | 5:21-CV-05014-DW <br><br><br> REDACTED ORDER |

**INTRODUCTION**

On March 5, 2021, claimant Thomas C. filed a complaint appealing the final decision of Andrew Saul[2], the acting Commissioner of the Social Security Administration, finding him not disabled. (Doc. 1). Defendant denies claimant is entitled to benefits. (Doc. 12). The court issued a briefing schedule requiring the parties to file a joint statement of materials facts ("JSMF"). (Doc. 14). For

---

[1] The Administrative Office of the Judiciary suggested the court be more mindful of protecting from public access the private information in Social Security opinions and orders. For that reason, the Western Division of the District of South Dakota will use the first name and last initial of every non-governmental person mentioned in the opinion. This includes the names of non-governmental parties appearing in case captions.

[2] Dr. Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Fed. R. Civ. P. 25(d), Dr. Kijakazi is automatically substituted for Andrew Saul as the defendant in all pending social security cases. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

the reasons stated below, claimant's motion to reverse the decision of the Commissioner (Doc. 20) is granted.

## FACTS AND PROCEDURAL HISTORY

The parties' JSMF (Doc. 15) is incorporated by reference. Further recitation of the salient facts is incorporated in the discussion section of this order.

On September 1, 2017, Mr. C. filed an application for Social Security disability benefits alleging an onset of disability date of May 1, 2016. (AR at p. 23).[3] The claim was initially denied on December 28, 2017, and denied upon reconsideration on May 23, 2018. (AR at p. 23). Mr. C. requested an administrative hearing on June 5, 2018, and one was held on February 26, 2020. (AR at p. 23). On April 7, 2020, the ALJ issued a written decision denying benefits. (AR at pp. 20-38). Mr. C. subsequently sought appellate review; his request was denied, making the decision of the ALJ final. (AR at p. 1). It is from this decision that Mr. C. timely appeals.

The issue before this court is whether the Administrative Law Judge's (ALJ) decision of April 7, 2020, that Mr. C. was not "under a disability, as defined in the Social Security Act, from May 1, 2016, through [April 7, 2020]" is supported by substantial evidence on the record as a whole. (AR at p. 38). See also Howard v. Massanari, 255 F.3d 577, 580 (8th Cir. 2001).

---

[3] The court will cite to information in the administrative record as "AR at p. ___."

## STANDARD OF REVIEW

The Commissioner's findings must be upheld if they are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006); Howard, 255 F.3d at 580. The court reviews the Commissioner's decision to determine if an error of law was committed. Smith v. Sullivan, 982 F.2d 308, 311 (8th Cir. 1992). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Cox v. Barnhart, 471 F.3d 902, 906 (8th Cir. 2006) (internal citation and quotation marks omitted).

The review of a decision to deny benefits is "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . [the court must also] take into account whatever in the record fairly detracts from that decision." Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (quoting Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001)).

It is not the role of the court to re-weigh the evidence and, even if this court would decide the case differently, it cannot reverse the Commissioner's decision if that decision is supported by good reason and is based on substantial evidence. Guilliams v. Barnhart, 393 F.3d 798, 901 (8th Cir. 2005). A reviewing court may not reverse the Commissioner's decision "'merely because substantial evidence would have supported an opposite decision.'" Reed, 399 F.3d at 920 (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th Cir.

3

1995)). Issues of law are reviewed *de novo* with deference given to the Commissioner's construction of the Social Security Act. See Smith, 982 F.2d at 311.

The Social Security Administration established a five-step sequential evaluation process for determining whether an individual is disabled and entitled to benefits under Title XVI. 20 CFR § 416.920(a). If the ALJ determines a claimant is not disabled at any step of the process, the evaluation does not proceed to the next step as the claimant is not disabled. Id. The five-step sequential evaluation process is:

> (1) Whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment – one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the residual functional capacity to perform . . . past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove there are other jobs in the national economy the claimant can perform.

Baker v. Apfel, 159 F.3d 1140, 1143–44 (8th Cir. 1998); see also Boyd v. Sullivan, 960 F.2d 733, 735 (8th Cir. 1992) (the criteria under 20 CFR § 416.920 are the same under 20 CFR § 404.1520 for disability insurance benefits).

The ALJ applied the five-step sequential evaluation required by the Social Security Administration regulations and found Mr. C. was not disabled. (AR at pp. 23-38).

## DISCUSSION

Mr. C. identifies the following issues: (1) whether the ALJ's residual functional capacity (RFC) finding is not supported by substantial evidence; (2) whether the ALJ's credibility determination is not supported by substantial evidence; (3) whether the ALJ erred in failing to find that Mr. C. met or equaled Listing 4.02 for cardiovascular impairments; and (4) whether the Commissioner erred by not considering new evidence. (Doc. 20).

### **STEP ONE**

At step one, the ALJ determined Mr. C. "has not engaged in substantial gainful activity since May 1, 2016, the alleged onset date" of disability. (AR at p. 26).

### **STEP TWO**

At step two, the ALJ must decide whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe. 20 CFR § 404.1520(c). A medically determinable impairment can only be established by an acceptable medical source. 20 CFR § 404.1513(a). Accepted medical sources include, among others, licensed physicians. Id. "It is the claimant's burden to establish that [his] impairment or combination of impairments are severe." Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007).

The regulations describe "severe impairment" in the negative. "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 CFR § 404.1521(a). An impairment is not severe, however, if it "amounts to

5

only a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." Kirby, 500 F.3d at 707. Thus, a severe impairment is one which significantly limits a claimant's physical or mental ability to do basic work activities.

The ALJ determined Mr. C. suffered from the following severe impairments: (1) Crohn's disease; (2) congestive heart failure; (3) coronary arterial disease status post myocardial infarction; (4) tachycardia; and (5) anxiety. (AR at pp. 26-27). Mr. C. does not challenge this finding. (Doc. 20).

### STEP THREE

At step three, the ALJ determines whether claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 ("Appendix 1"). 20 CFR §§ 404.1520(d), 404.1525, and 404.1526. If a claimant's impairment or combination of impairments meets or medically equals the criteria for one of the impairments listed and meets the duration requirement of 20 CFR § 404.1509, the claimant is considered disabled. At that point, the Commissioner "acknowledges [the impairment or combination of impairments] are so severe as to preclude substantial gainful activity. . . . [and] the claimant is conclusively presumed to be disabled." Bowen v. Yuckert, 482 U.S. 137, 141 (1987).

The ALJ determined Mr. C. did not have an impairment or combination of impairments which met or were medically equal to one of the impairments listed in Appendix 1. (AR at pp. 27-29).

6

Mr. C. objects to the ALJ's finding at Step 3. (Doc. 20). He argues the ALJ failed to consider and evaluate Listing 4.02, Chronic Heart Failure. (Doc. 20).

> Listing 4.02 provides:
>
> Chronic heart failure while on a regimen of prescribed treatment, with symptoms and signs described in 4.00D2. The required level of severity for this impairment is met when the requirements in both A and B are satisfied.
>
> A. Medically documented presence of one of the following:
>
> 1. Systolic failure (see 4.00D1a(i)), with left ventricular end diastolic dimensions greater than 6.0 cm or ejection fraction of 30 percent or less during a period of stability (not during an episode of acute heart failure); or
> 2. Diastolic failure (see 4.00D1a(ii)), with left ventricular posterior wall plus septal thickness totaling 2.5 cm or greater on imaging, with an enlarged left atrium greater than or equal to 4.5 cm, with normal or elevated ejection fraction during a period of stability (not during an episode of acute heart failure);
>
> AND
>
> B. Resulting in one of the following:
>
> 1. Persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living in an individual for whom an MC, preferably one experienced in the care of patients with cardiovascular disease, has concluded that the performance of an exercise test would present a significant risk to the individual; or
> 2. Three or more separate episodes of acute congestive heart failure within a conservative 12-month period (see 4.00A3e), with evidence of fluid retention (see 4.00D2b(ii)) from clinical and imaging assessments at the time of the episodes, requiring acute extended physician intervention such as hospitalization or emergency room treatment for 12 hours or more, separated by periods of stabilization (see 4.00D4c); or
> 3. Inability to perform on an exercise tolerance test at a workload equivalent to 5 METs or less due to:
>    a. Dyspnea, fatigue, palpitations, or chest discomfort; or

      b. Three or more consecutive premature ventricular contractions (ventricular tachycardia), or increasing frequency of ventricular ectopy with at least 6 premature ventricular contractions per minute; or

      c. Decrease of 10 mm Hg or more in systolic pressure below the baseline systolic blood pressure or the preceding systolic pressure measured during exercise (see 4.00D4d) due to left ventricular dysfunction, despite an increase in workload; or

      d. Signs attributable to inadequate cerebral perfusion, such as ataxic gait or mental confusion.

20 C.F.R. Part 404, Subpart P, Appendix 1.

Mr. C. argues that he satisfies 4.02(A) because his "ejection fraction has nearly always measured less than 30%" which is why a pacemaker was implanted, and "[t]here have been no echocardiograms measuring his ejection fraction since that time." (Doc. 20). The Commissioner neither agrees nor disagrees with Mr. C.'s argument regarding 4.02(A). (Doc. 24).

There is medical evidence in the record to satisfy 4.02(A). As to 4.02(A)(1), Mr. C.'s ejection fraction has almost always measured less than 30%. After his heart attack and hospitalization on July 18, 2016, his ejection fraction was 30%-35% and 41%, but since August of 2017, his highest ejection fraction has been 21%. (AR at pp. 381, 410, 417, 418, 663, 742). There have been no echocardiograms measuring his ejection fraction since his automatic implantable cardioverter defibrillator (AICD) was implanted on December 7, 2017. (AR. at p. 667). As such, Mr. C. meets the first requirement of 4.02.

As to 4.02(B), Mr. C. argues that he "cannot precisely satisfy the requirements of 4.02(B) because he hasn't been able to afford to see or treat with [a] specialist, heart doctor, since his pacemaker was implanted in December of 2017," but the record shows he has significant limitations to

8

activities of daily living due to his fatigue and limitations due to his heart impairments, pursuant to 4.02(B)(1). (Doc. 20). Also, Mr. C. concedes he has not had three or more separate episodes of acute heart failure within a 12-month period, pursuant to 4.02(B)(2), and no doctor has rendered Mr. C. unable to perform an exercise tolerance test, pursuant to 4.02(B)(3). (Doc. 20). The Commissioner disagrees and argues that the listing requires objective medical evidence, which is not present. (Doc. 24).

      Mr. C.'s argument is one of medical equivalence. Medical equivalence must be based on medical findings. Pursuant to 20 C.F.R. § 404.1526(b)(1)(ii), "we will find that your impairment is medically equivalent to that listing if you have other findings related to your impairment that are at least of equal medical significance to the required criteria." Here, the record lacks evidence that Mr. C.'s congestive heart failure meets the second requirement of 4.02.

      The record does not support Mr. C.'s argument that he was very seriously limited in his daily activities. In Mr. C.'s function report from September of 2017, he states he prepares his own meals, but only frozen meals because he cannot stand over a stove for an extended period of time; is unable to do house, yard work or shovel snow; does his own laundry about once a month which takes him approximately three hours; can drive and go out by himself; goes shopping at Walmart about every two weeks but his shopping is limited to three to four items that are not in the back of the store; he can walk for about one hundred feet before needing a five minute rest; and that he has

9

no energy dressing, bathing, shaving, and caring for his hair. (AR at pp. 256-263).

At the administrative hearing, Mr. C. testified that he can drive, has a hard time getting through grocery shopping, takes care of all his own personal needs (eating, dressing, and bathing), does his own laundry, but does not cook, and spends approximately twelve hours per day on the computer. (AR at pp. 65-75). Mr. C.'s mother, Barb C. also testified at the administrative hearing. She testified that Mr. C. does some household chores, does a lot of cooking and helps her cook, does basically light things around the house such as taking the garbage out and sweeping the floor. (AR at pp. 75-77).

The Eighth Circuit found a claimant did not satisfy the criteria in 4.02(B) when the record included evidence that the claimant was able to drive, shop for groceries, play video games and cards, take care of himself, look after his children, help care for pets; and even though housework caused the claimant to become fatigued, he could prepare simple meals, vacuum, wash dishes, do laundry, take out the trash, and pick up toys. KKC v. Colvin, 818 F.3d 364, 370-71 (8th Cir. 2016). In addition, KKC's congestive heart failure was diagnosed as New York Heart Association (NYHA) Class III symptoms meaning the claimant had "marked limitation in activity due to symptoms, even during less-than-ordinary activity." Id. at 373-74.

Here, like in KKC, Mr. C. drives, shops for groceries, spends approximately twelve hours a day at the computer, takes care of himself, prepares simple meals, does laundry, and helps with light housework such as

10

taking out the garbage and sweeping the floor. However, unlike in KKC, Mr. C.'s NYHA congestive heart failure is less severe, he is diagnosed as Class II symptoms meaning "[s]light limitation of physical activity. Comfortable at rest. Ordinary physical activity results in fatigue, palpitation, dyspnea (shortness of breath)." Classes of Heart Failure, American Heart Association, https://www.heart.org/en/health-topics/heart-failure/what-is-heart-failure/classes-of-heart-failure (last visited June 2, 2022). (AR at pp. 125, 748). Thus, the record does not support that Mr. C. was very seriously limited in his daily activities.

Also, the record does not support that a medical consultant concluded an exercise test would have presented a significant risk to Mr. C. In fact, Dr. Lessegard, in his Disability Determination Explanation Reconsideration in May of 2018, noted Mr. C.'s NYHA Class II symptoms and that there was no documentation of inability to perform an exercise test. (AR at pp. 125-26). As such, Mr. C. does not meet the second requirement of 4.02.

The court finds that Mr. C.'s impairment did not meet Listing 4.02, so the ALJ did not err in failing to consider and evaluate the listing.

### **STEP FOUR**

Before considering step four of the evaluation process, the ALJ must determine a claimant's residual functioning capacity ("RFC"). 20 CFR §§ 404.1520(a)(4)(iv) & 404.1545. RFC is a claimant's ability to do physical and mental work activities on a sustained basis despite any limitations from his impairments. 20 CFR § 404.1545(a)(1). In making this finding, the ALJ must

11

consider all of the claimant's impairments, including those which are not severe.  20 CFR § 404.1545(e).  All of the relevant medical and non-medical evidence in the record must be considered.  20 CFR § 404.1513.

In determining a claimant's RFC, the ALJ considers any medical opinions and claimant's degree of functional limitation.  20 CFR § 404.1545(a)(1), (4).  "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [claimant's] impairment(s), including [claimant's] symptoms, diagnosis, and prognosis, and what [claimant] can still do despite the impairment(s), and . . . physical or mental restrictions."  20 CFR § 404.1527(b).  In weighing medical opinion evidence, the ALJ must consider the factors set forth in the regulations.  20 CFR § 404.1527(c).  An ALJ is not required to discuss every piece of evidence, and their failure to cite specific evidence does not mean they did not consider it.  Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000).

Rating of functional limitation evaluates the extent to which impairment "interferes with [claimant's] ability to function independently, appropriately, effectively, and on a sustained basis."  20 CFR § 404.1520a(c)(2).

Here, the ALJ concluded Mr. C.'s RFC permitted him to perform light work[4], stating:

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of

12

> [he] can lift and/or carry up to 10 pounds frequently and 20 pounds occasionally . . . can sit throughout an 8-hour workday with normal breaks . . . can stand and/or walk about 6 hours in an 8-hour workday with normal breaks . . . can never climb ladders, ropes or scaffolds . . . can occasionally climb ramps or stairs . . . can occasionally balance as defined in the Selected Characteristics of Occupations . . . can occasionally stoop, kneel, crouch or crawl . . . can tolerate occasional exposure to work around hazards such as dangerous moving machinery and unprotected heights . . . needs an indoor work environment with indoor plumbing . . . is able to understand, remember and carry out short, simple instructions . . . can occasionally interact appropriately with coworkers and members of the public . . . can respond appropriately to work pressures in a usual work setting and changes in a routine work setting . . . can maintain attention and concentration for routine work for 2-hour segments.

(AR at p. 30).

Mr. C. challenges this finding. (Doc. 20). Mr. C. argues the RFC is not supported by substantial evidence and does not include the need for extra bathroom breaks. (Doc. 20). He further argues there is sufficient medical evidence that he cannot stand and/or walk six hours in an eight-hour workday with normal breaks. (Doc. 20). Also, that it is well documented in the medical records that his cardiac conditions impact his tolerances, and his ongoing difficulty with fatigue and stamina to stand/walk the majority of an eight-hour workday. (Doc. 20). The Commissioner argues there is substantial evidence to support the ALJ's RFC. (Doc. 24).

---

performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 CFR § 404.1567(b).

Mr. C. has suffered from Crohn's disease since he was 15 years old. (AR at p. 69). He had a heart attack in July of 2016, which required a stent. (AR at p. 432). His ejection fraction remained low, so a defibrillator (AICD) was implanted in December of 2017. (AR at p. 667).

In December of 2017, Dr. Barker was the first medical consultant to make an assessment of Mr. C.'s RFC. In Dr. Barker's assessment, he determined the maximum work Mr. C. was capable of performing was sedentary work. (AR at pp. 95-99). Dr. Barker determined that Mr. C. could lift and/or carry up to 10 pounds frequently and 20 pounds occasionally, he could stand and/or walk for 4 hours in an 8-hour workday and sit for about 6 hours in an 8-hour workday with normal breaks. (AR at pp. 95-99).

Then, approximately six months later, in May of 2018 at reconsideration, Dr. Lassegard also determined the maximum Mr. C. was capable of performing was sedentary work. (AR at pp. 123-28). Dr. Lassegard determined Mr. C. could lift and/or carry up to 10 pounds frequently and 20 pounds occasionally, he could stand and/or walk for 4 hours in an 8-hour workday and sit for about 6 hours in an 8-hour workday with normal breaks. (AR at pp. 123-28).

The ALJ found these opinions of Dr. Barker and Dr. Lassegard, non-treating and non-examining medical sources, to be persuasive noting that they were "internally consistent and well supported by a reasonable explanation and the available evidence." (AR at p. 35). However, the ALJ found that the "experts did not have the same opportunity as the [ALJ] to review the evidence

submitted through the date of the hearing or to see and hear the claimant's testimony." (AR at p. 35).

The medical evidence in the record after the medical opinions of Dr. Barker and Dr. Lassegard consists of:

- June 7, 2018: Mr. C. was seen at Community Health for follow-up of chronic conditions and medications, complains of chest pain or discomfort, palpitations, orthopnea, diffuse abdominal pain and muscle cramps. No findings are documented. (AR at p. 830).

- August 9, 2018: Mr. C. was seen at Community Health for labs, he requested a consultation with a gastroenterology specialist for GI issues and Crohn's. (AR at p. 830).

- June 11, 2019: Emergency room visit. Mr. C. complained of shortness of breath for three weeks that is worse with exertion, and leg swelling. Mr. C. reported he saw his doctor yesterday, started back on Lasix, and is feeling better today and the swelling in his legs is nearly gone, but still has some shortness of breath. Mr. C. reported that he was told by his doctor to come to the emergency room because his BNP was high. Reported having diarrhea 10-15 times a day. He was given an IV of Lasix. Mr. C. checked himself out against medical advice. (AR at pp. 877-905).

.

- June 27, 2019: Mr. C. saw Dr. Vogele, gastroenterologist, at Community Health. Dr. Vogele found there could be a component of bile acid diarrhea and prescribed Welchol. Dr. Vogele recommended a CT scan of the abdomen and pelvis, and a colonoscopy, but noted that Mr. C. does not have insurance so he will apply for patient assistance through Rapid City Regional Hospital. (AR at pp. 859-61).

- July 1, 2019: Dr. Vogele notes he received a telephone call from Mr. C. where Mr. C. reported a decrease in stools to 5-6 in a 24-hour period since on Welchol. Mr. C. also reports he applied for patient assistance. (AR at p. 861).

- February 16, 2020: Emergency room visit. Mr. C. complained of frequent vomiting and diarrhea and stated that the last time he vomited like this he had a heart attack. His chest x-ray showed no pneumonia or pneumothorax. His EKG showed tachycardia but no acute ischemic changes. He was given IV fluids along with Zofran and discharged that same day. (AR at pp. 862-76).

15

- February 20, 2020: Administrative Hearing. Mr. C. testified he has no energy and constant diarrhea from Crohn's. He stated that even though he's had Crohn's since he was 15, it has worsened since his heart attack in 2016. He testified that he uses the restroom 6-10 times per day, wears incontinence underwear, and despite being home most of the time, he sometimes does not make it to the bathroom in time. Mr. C. testified that he has a hard time getting through grocery stopping. Testified he thinks he can lift about 50 pounds. As to activities of daily living, he testified he can take care of his personal needs, eating, dressing and bathing; he does his own laundry; does not cook; and is on the computer approximately 12 hours per day. (AR at pp. 65-75).

These records show the continuation of Mr. C.'s conditions. The only improvement was the statement from Mr. C. to Dr. Vogele that he had fewer stools after starting on Welchol, but approximately seven months later at the administrative hearing, Mr. C. testified that he continues to take Welchol and that he uses the restroom approximately 6-10 times per day and wears incontinence underwear. (AR at pp. 68, 861).

Also, Dr. Lassegard made another determination in May of 2019 that Mr. C. was limited to sedentary work, but this time Dr. Lassegard physically examined Mr. C. (AR at pp. 813-23). Dr. Lassegard determined that Mr. C.'s "standing and walking need to be limited because of his conditions." (AR at p. 817). Dr. Lassegard determined that Mr. C. can occasionally lift and carry up to 20 pounds, that he can stand for 4-6 hours total in an 8-hour workday but can only stand for 1 hour at a time without interruption, that he can walk for a total of 2 hours in an 8-hour workday, and that he can sit for 2 hours at a time without interruption. (AR at p. 813-23). The ALJ found Dr. Lassegard's opinion to be persuasive, except as to his opinion that Mr. C. could only "sit for

2 hours at a time and stand and/or walk for 4 hours total in an 8-hour workday" which the ALJ found was very unpersuasive because it was not supported by physical examination findings or Mr. C.'s activities of daily living. (AR. at p. 36).

Here, the court agrees with Mr. C. that the ALJ's RFC finding is not supported by substantial evidence and remand is necessary. The ALJ seemingly ignored the findings of Dr. Barker and Dr. Lasssegard that Mr. C.'s RFC should be limited to sedentary work. See Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001) (A claimant's RFC is a medical question and some medical evidence must support the determination of the claimant's RFC).

The record as a whole is replete with evidence demonstrating the continuity and severity of Mr. C.'s physical conditions during the relevant disability period. Also, state agency experts consistently determined Mr. C. was limited to sedentary work, which is consistent with the medical records.

The ALJ determined Mr. C. was able to perform light work with limitations. Having reviewed and considered the record, the RFC does not adequately account for the functional limitations imposed by Mr. C.'s severe physical impairments. The ability to perform light work requires the ability to stand and walk for a total of six hours out of an eight-hour workday. The entirety of the record makes it clear that Mr. C. could not do so.

The court finds the ALJ's assessment of Mr. C.'s RFC is not supported by substantial evidence. See Goff v. Barnhart, 421 F.3d 785, 793 (8th Cir. 2005) ("The ALJ must assess a claimant's RFC based on all relevant, credible

evidence in the record, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.") (citations and internal quotations omitted). As such, the matter is remanded to the Commissioner to reassess Mr. C.'s RFC consistent with this opinion.

Because the court finds reversible error, it need not address the credibility determination of the ALJ as to Mr. C., or consideration of new evidence.

## ORDER

Based on the above analysis, it is hereby

ORDERED that Plaintiff's Motion for Order Reversing Decision of Commissioner (Doc. 20) is granted; and it is further

ORDERED that Defendant's Motion for Order Affirming Decision of the Commissioner (Doc. 23) is denied; and it is further

ORDERED that, pursuant to sentence four of 42 U.S.C. § 405(g), the case is remanded to the Commissioner for rehearing consistent with the court's analysis.

DATED this 30th day of September, 2022.

BY THE COURT:

_____
DANETA WOLLMANN
United States Magistrate Judge